**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-cv-21881-ALTMAN/Hunt**

**MARCIA TAYLOR**,

     *Plaintiff,*

*v.*

**ALEJANDRO N. MAYORKAS,**
**SECRETARY, U.S. DEPARTMENT OF**
**HOMELAND SECURITY**,

     *Defendant.*

_____/

### <u>ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT</u>

Our Plaintiff, Marcia Taylor, sued our Defendant, Department of Homeland Security ("DHS") Secretary Alejandro N. Mayorkas, alleging (among other things) that she was discriminated against during her employment at DHS. *See generally* Amended Complaint [ECF No. 9]. The Defendant has since moved to dismiss the Amended Complaint under Rule 12(b)(6). *See* Motion to Dismiss Plaintiff's Amended Complaint (the "MTD") [ECF No. 22]. For the reasons we lay out below, we **GRANT** the MTD and **DISMISS** Counts I–III of the Amended Complaint **without prejudice** and Counts IV–V **with prejudice**.

THE FACTS[1]

I.      The Plaintiff's experience at DHS

The Plaintiff worked at DHS's Miami District Field Office "from around 2015 to 2018," during which her DHS supervisors "continued to assign her job duties at the GS-12/13/14 level, without offering her a promotion or adjusting her rate, from GS-9." Amended Complaint ¶ 1. On March 20, 2018, Taylor applied for a different position at the Miami Field Office, which matched the "GS-12/13/14 work tasks assigned by her management," *id.* ¶ 2, but DHS officials "stopped her application" and told her that "[y]ou cannot apply for this job . . . you have a PhD, good luck," *id.* ¶¶ 3–5. DHS officials then "placed a less qualified white, Hispanic, male candidate into the position[.]" *Id.* ¶¶ 6–9.

The Plaintiff remained at DHS in her original position, and her supervisors "continued to assign her GS-12/13/14 work tasks," "instructed [her] to train the less qualified [individual]," and "order[ed] her to provide further training to the entire Miami District employees and management.*"* *Id.* ¶¶ 10–12. Burdened by these assignments—and frustrated by the perceived mistreatment—the Plaintiff ultimately resigned on December 8, 2018. *See id.* ¶ 16 (noting that she informed her employers by letter "that she was forced to resign from her job because of intentional harassment and retaliation from DHS management . . . which caused Plaintiff's constructive termination").

On April 19, 2019, after the Plaintiff resigned, DHS "management . . . conducted an internal local criminal investigation against her" and falsely accused her of (1) having "made unauthorized ATM cash withdrawals using her approved Government travel credit card while on authorized official

---

[1] We accept the allegations of the Amended Complaint as true for purposes of this Order. *See Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) ("In deciding a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, but 'legal conclusions without adequate factual support are entitled to no assumption of truth.'" (quoting *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) (cleaned up))).

travel," and (2) writing "a bad check that bounced to the Federal Government." *Id.* ¶¶ 17, 18, 21. Despite all this, the Plaintiff applied (and was interviewed) for a different job within the DHS Miami Field Office. *Id.* ¶ 22. Although the Plaintiff says that she was "qualified" for that job, she was not selected. *Id.* ¶ 23. Instead, DHS hired several candidates who were *both* "far[ ] less qualified than the Plaintiff" *and* "related to one or more members at the DHS Miami Field Office management." *Id.* ¶¶ 23–25.

## II.    The Plaintiff files two civil-rights complaints and two federal lawsuits

On June 20, 2018, shortly before she resigned from DHS, the Plaintiff filed a complaint with the DHS Office for Civil Rights and Civil Liberties. *See* DHS Office for Civil Rights and Civil Liberties Final Agency Decision (the "First Internal DHS Complaint Order") [ECF No. 22-1] at 1 (noting that the Plaintiff "initiated contact with an Equal Employment Opportunity (EEO) counselor" on June 20, 2018).[2] In that complaint, she alleged that (1) she "was denied the opportunity to submit her resume for a promotion" to position No. OPM-ERO-10141561-DHA-ABF (the "1561 Position); (2) she "felt forced to resign from her position"; and (3) the "Agency sent an email [to her] alleging she violated her travel card." *Id.* at 2.[3] The DHS Office for Civil Rights ultimately concluded that the Plaintiff "failed to prove that ICE discriminated against her." *Id.* at 10. On June 2, 2022, it informed the Plaintiff of its decision, *see id.* at 29, and told her that she had "the right to file a civil action in an

---

[2] "In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holding, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). The First Internal DHS Complaint (like the Second Internal DHS Complaint [ECF No. 22-2]) is plainly central to the Plaintiff's Amended Complaint because—as we're about to see—it establishes the timeframe within which the Plaintiff could file her civil action. And the Plaintiff doesn't dispute its authenticity. *See generally* MTD Response.

[3] This First Internal DHS Complaint Order refers exclusively to the 1561 Position, *see* First Internal DHS Complaint at 2–3 ("Findings of Fact"), which is the job the Plaintiff applied for in 2018, *see* Amended Complaint ¶ 2.

appropriate United States District Court within 90 days after [receiving] this final decision if you do not appeal to EEOC," *id.* at 12.

While that First Internal DHS Complaint was pending, the Plaintiff submitted a second complaint to the DHS Office for Civil Rights on December 7, 2021. *See* DHS Office for Civil Rights and Civil Liberties Procedural Dismissal (the "Second Internal DHS Complaint Order") [ECF No. 22-2] at 1 (noting that the Plaintiff "initiated contact with an Equal Employment Opportunity (EEO) counselor" on December 7, 2021). This time, the DHS Office for Civil Rights had to determine whether "ICE discriminated against Complainant based on race (Black/Dark Skin), color (Black), age (YOB: 1967), and retaliation (prior EEO activity)" in its decision *not* to select the Plaintiff for the following four positions: LAG-FMI-10615195-DH-SD; LAG-ERO-10258487-DHA-SR; FMI-10663632-DHA-MA; and DAL-ICD-10840608-DH-HR. *Id.* at 2.[4] On January 10, 2023, the DHS Office for Civil Rights "dismiss[ed] th[e] complaint pursuant to [29 C.F.R. § 1614.107(a)(2)] for untimely EEO Counselor contact." *Ibid.* On January 12, 2023, the DHS Office for Civil Rights informed the Plaintiff that she had "the right to file a civil action in an appropriate United States District Court within 90 days after [receiving] this final decision if you do not appeal to EEOC[.]" *Id.* at 6, 21.

On September 1, 2022—within the First Internal Complaint Order's 90-day appeal period and before the adjudication of the Second Internal Complaint—the Plaintiff, proceeding *pro se* before Judge Bloom of our Court, filed her first federal lawsuit against the Defendant. *See* Complaint, *Taylor v. U.S. Dep't of Homeland Sec.*, 22-cv-22805-BB (S.D. Fla. Aug. 1., 2022) (Bloom, J.), ECF No. 1. In that complaint, the Plaintiff asserted claims that were similar to the ones she's advanced before us: Title

---

[4] We don't know anything else about these vacancies other than that LAG-FMI-10615195-DH-SD is the position for which the Plaintiff applied in 2019 (after her resignation). *Compare* Second Internal DHS Complaint Order at 2 ("Claims at Issue"), *with* Amended Complaint ¶ 22.

VII Hostile Work Environment Based on Race, Color, Sex, Age (Count I); Title VII Retaliation (Count II); 5 U.S.C. § 2302 Prohibited Personnel Practices (Count III); 18 U.S.C. § 1001 False Statement, Concealment (Count IV); and Constructive Dismissal (Count V). *See generally ibid.* And those claims arose from the very same factual allegations she's presented in her Amended Complaint here. *Compare id.* ¶¶ 8–31, *with* Amended Complaint ¶¶ 1–28. Rather than pay the $405 filing fee, though, the Plaintiff submitted an Application for Leave to Proceed *in Forma Pauperis*, *Taylor*, 22-cv-22805-BB, ECF No. 3, which Judge Bloom denied, *see* Order Denying Leave to Proceed *in Forma Pauperis*, *Taylor*, 22-cv-22805, ECF No. 6 (noting that, while the Plaintiff claimed she had no income, she admitted that she worked for the city of Cape Coral). The Plaintiff then paid the fee, and the Clerk of Court issued a summons for DHS. *See* Summons in a Civil Action, *Taylor*, 22-cv-22805-BB, ECF No. 10. But the Plaintiff never served the Defendant, *see generally* Docket, *Taylor*, 22-cv-22805-BB, despite having been warned that her failure to do so would "result in dismissal without prejudice and without further notice," Order to File Proof of Service, 22-cv-22805-BB, ECF No. 11. So, on December 7, 2022—after the 90-day service window outlined in FED. R. CIV. P. 4(m) had closed—Judge Bloom dismissed the Plaintiff's complaint without prejudice "for failure to timely serve" and closed the case. Order of Dismissal without Prejudice, *Taylor*, 22-cv-22805, ECF No. 12.

On May 3, 2023—after the 90-day appeal periods for each of the First and Second Internal DHS Complaint Orders had expired—the Plaintiff filed a *second* federal lawsuit against the Defendant, this time before Judge Scola. *See* Complaint, *Taylor v. Sec'y, U.S. Dep't of Homeland Sec.*, 23-cv-21674-RNS (S.D. Fla. May 3, 2023) (Scola, J.), ECF No. 1. The Plaintiff's claims before Judge Scola were very similar to the ones she'd asserted before Judge Bloom (and which she's now brought to us): Discrimination Leading to Constructive Dismissal (Claim I); False or Fraudulent Claim of Unauthorized ATM Withdrawal and Writing a Bad Check (Claim II); and Engagement in Nepotism and EEOC Failure to Investigate Claim (Claim III). *See generally ibid.* And, again, these claims were tied

to the same factual allegations she'd advanced in the First Internal DHS Complaint and the Judge Bloom Complaint, *see generally ibid.*—which, in turn, are the same factual allegations she's asserted here. On May 4, 2023, Judge Scola gave the Plaintiff one week *either* to pay the $405 filing fee *or* to file an application to proceed *in forma pauperis*. *See* May 4, 2023, Paperless Order, *Taylor*, 23-cv-21674-RNS, ECF No. 6. The Plaintiff did neither. *See generally* Docket, 23-cv-21674-RNS. So, on May 17, 2023, Judge Scola dismissed the Plaintiff's second complaint without prejudice, finding that the Plaintiff had "abandoned her prosecution of th[e] case and . . . ha[d] not paid [her] filing fee or applied to proceed without payment." Order of Dismissal for Failure to Pay Fees, *Taylor*, 23-cv-21674-RNS, ECF No. 8.

### III.    The Plaintiff files this lawsuit

On May 19, 2023—two days after Judge Scola dismissed her case—the Plaintiff filed her complaint in our case, *see* Initial Complaint [ECF No. 1], which we struck as a shotgun pleading, *see* May 23, 2023, Order [ECF No. 7]. The Plaintiff then filed the operative Amended Complaint on June 2, 2023, in which she asserts that she's been "irreparably damaged by the actions of the DHS Miami District Field Office management" and "blacklisted from being rehired by the DHS Miami District Field Office because of the derogatory document held against her." Amended Complaint ¶¶ 26–27. She also alleges that the "acts of the DHS Miami District Field Office have caused her continued [e]xtreme: emotional distress, embarrassment, and financial hardship from loss of her career with DHS, to this day." *Id.* ¶ 28. The Plaintiff therefore brings the following five causes of action against the Defendant: (I) Discrimination; (II) Retaliation; (III) Constructive Termination; (IV) Violation of the False Claims Act; and (V) Nepotism. *See id.* ¶¶ 1, 10, 13, 17, 22. Based on these claims, she asks that we:

1) Award Plaintiff Reinstatement of Plaintiff's job at the GS-13/14 step 10 level, in a Remote position . . . ;
2) Remove all derogatory documents held in the local Miami District office and HR office, that state[ ] that the Plaintiff made illegal, or otherwise, made unauthorized ATM withdrawal via Plaintiff's Travel Card . . . ;

3) Remove all derogatory documents held in the local Miami District office and HR office, that states that Plaintiff wrote a bad check that bounced to the Federal Government;

4) Instruct all hiring officials to not block or prevent Plaintiff's application(s) from being processed and considered for re-employment;

5) Award Plaintiff all back pay, including benefits . . . for full gap of employment from December 8, 2018, to [now];

6) Award compensatory damages to Plaintiff in the amount $650,000.00 and all other monetary damages deemed appropriate by this court;

7) Award punitive damages of 9 times compensatory damages or $4,950,000;

8) Award pain and suffering in the amount of $400,000;

9) Order DHS to pay all taxes, costs and legal fees separate from any settlement amount; and

10) Award such additional relief as justice may require, together with Plaintiff's costs and disbursements in this action.

*Id.* ¶¶ 29–39 (errors in original).

On October 6, 2023, the Defendant filed its MTD under Rule 12(b)(6), arguing that the Plaintiff's claims "should be dismissed with prejudice." MTD at 1. *First*, the Defendant says that Counts I–III (Discrimination, Retaliation, and Constructive Termination) should be dismissed because they're "time-barred by Title VII's statute of limitations." *Ibid.* According to the Defendant, the Plaintiff "commenced this case long after her receipt of the relevant underlying Final Agency Decision[5] containing a right to sue notice advising that she had 90 days to file suit in district court." *Ibid. Second*, the Defendant contends that Count IV should be dismissed because the False Claims Act "simply has no application to the facts alleged" since it "deals with fraudulent claims for payment made against the government, not allegedly 'false claims' made against [the Plaintiff] relating to unauthorized charges on her government-issued credit card." *Id.* at 2. Finally, the Defendant asks that we dismiss Count V—which asserts a "Nepotism" claim—because (1) the Plaintiff "commenced suit long after her receipt of the relevant administrative Procedural Dismissal," and (2) the governing

---

[5] According to the Defendant, that "relevant . . . Final Agency Decision" is the First Internal DHS Complaint. *See* MTD at 1, 5.

statute for nepotism claims—5 U.S.C. § 3110—"has no application to the facts alleged and, in any event, does not provide a private right of action." *Ibid.*

In her MTD Response [ECF No. 26], the Plaintiff counters that her claims aren't time-barred (she doesn't address any of the Defendant's other arguments[6]) because "she filed her first Case No. 22-cv-22805 [before Judge Bloom] on September 1, 2022, and said case and all subsequent cases were dismissed Without Prejudice pursuant to Florida Rules of Civil Procedure, this Case No. 23-cv-21881 and the Amended Complaint are now timely filed therefore, Title VII and all issues stated under Defendant's Motion to Dismiss under item IV, does not apply as claimed by the Defendant." MTD Response at 2. In his MTD Reply, the Defendant maintains that "the timely commencement of a case that is later dismissed without prejudice does not toll the applicable statute of limitations." MTD Reply at 2. This Order follows.

## THE LAW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ibid.* (quoting *Twombly*, 550 U.S. at 555). "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will

---

[6] By failing to respond to these arguments, the Plaintiff has forfeited any response she might have had. *See Gent Row, LLC v. Truist Fin. Corp.*, 2022 WL 3682172, at *2 (S.D. Fla. June 27, 2022) (Dimitrouleas, J.) ("Plaintiff has abandoned this claim by failing to defend it in opposition to the Motion to Dismiss."). But, since the Plaintiff is *pro se*—and in the interest of completeness—we'll conduct a full analysis of the Plaintiff's claims before disposing of them.

reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek*, 832 F.3d at 1246.

But "*pro se* [filings], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erikson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014) ("We also construe the complaint liberally because it was filed *pro se*."); *cf.* FED. R. CIV. P. 8(f) ("All pleadings shall be so construed as to do substantial justice."). Still, while we treat *pro se* litigants with some leniency, "this leniency does not give a court license to serve as *de facto* counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action." *Schwarz v. Ga. Composite Med. Bd.*, 2021 WL 4519893, at *2 (11th. Cir 2021) (cleaned up). Notably, the requirement that "a complaint must contain sufficient facts, accepted as true, to state a claim for relief that is plausible on its face . . . also applies to *pro se* complaints." *Wells v. Miller*, 652 F. App'x 874, 875 (11th Cir. 2016); *see also Saunders*, 766 F.3d at 1266 (recognizing that *Twombly* and *Iqbal* apply to *pro se* complaints).

## ANALYSIS

## I.   Counts I–III: Title VII Claims (Discrimination, Retaliation, and Constructive Termination)

### a.   These claims are time-barred

"Before a potential plaintiff may sue for discrimination under Title VII, she must first exhaust her administrative remedies." *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). The Plaintiff has complied with this requirement, as evidenced by the "Right to Sue" letters that were

attached to the First and Second Internal DHS Complaint Orders. *See* First Internal DHS Complaint Order at 19–20; Second Internal DHS Complaint Order at 6.

Whether her lawsuit is timely, though, is a harder question. According to the Defendant, "Counts I–III are time-barred by Title VII's statute of limitations; Plaintiff commenced this case long after her receipt of the relevant underlying Final Agency Decision [the First Internal DHS Complaint Order] containing a right to sue notice advising that she had 90 days to file suit in district court. Absent a time machine, this deficiency cannot be cured, amendment would be futile, and dismissal with prejudice is therefore proper." MTD at 1. The Plaintiff disagrees and asks us to find that this case relates back to her complaint before Judge Bloom, which "was initially filed in a timely manner." MTD Reply at 1.

Under 29 C.F.R. § 1614.407, "a complainant who has filed an individual complaint is authorized under title VII to file a civil action in an appropriate United States District Court within 90 days of receipt of the agency final action[.]" 29 C.F.R. § 1614.407(a) (cleaned up); *see also* 42 U.S.C. § 2000e-5(f)(1) (providing that "within ninety days after the giving of . . . notice [of dismissal of the charge] a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved"); *Page v. Postmaster Gen. Chief Exec. of U.S. Postal Serv.*, 493 F. App'x 994, 996 (11th Cir. 2012) (per curiam) ("Section 2000e-5, in turn, allows an employee to file an action in the district court within 90 days of receiving a final agency decision or right-to-sue letter."). The Plaintiff bears the burden of establishing that her claims are timely. *See Jackson v. Seaboard C. L. R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982) ("[A] plaintiff must generally allege in his complaint that all conditions precedent to the institution of the lawsuit have been fulfilled." (cleaned up)); *see also Green v. Union Foundry Co.*, 281 F.3d 1229, 1233 (11th Cir. 2002) ("Once the defendant contests th[e] issue, the plaintiff has the burden of establishing that he met the ninety day filing requirement[.]").

There's no question that the lawsuit before us—*if* considered in isolation—is untimely. This

is true even if we give the Plaintiff the benefit of the doubt and assume that she had ninety days from the date on which she was served with the *Second* Internal DHS Complaint Order to file this federal action.[7] Because she was served with that Second Internal DHS Complaint Order on January 12, 2023, *see* Second Internal DHS Complaint at 21 (showing date of service), her ninety-day window would have closed on April 12, 2023. But she didn't file this lawsuit until May 19, 2023, *see* Initial Complaint—more than a month late.

But that's not the end of our analysis. Under Rule 15, "[a]n amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" FED. R. CIV. P. 15(c)(1)(B). And that *may* be what happened here.[8] *See Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1368 (11th Cir. 2018) ("Relation back is a legal fiction employed to salvage claims that would otherwise be unjustly barred by a limitations provision."); *Dean v. United States*, 278 F.3d 1218, 1222 (11th Cir. 2022) ("The key consideration [for relation back] is that the amended claim arises from the same conduct and occurrences upon which the original claim was based.").

We recently applied the "relation-back" doctrine in *Deffendall v. Stinson*, 2023 WL 8170937 (S.D. Fla. Nov. 24, 2023) (Altman, J.). The *pro se* inmate in that case brought a § 1983 claim against several jailers who (the plaintiff alleged) had "failed to protect him from [another] violent inmate." *Id.* at *5.

---

[7] We say "benefit of the doubt" because it's not clear from the Amended Complaint (or from the record generally) *which* lawsuit corresponds to which Internal DHS Complaint Order.

[8] The Plaintiff hasn't *explicitly* invoked Rule 15. *See generally* Amended Complaint; MTD Response. Still, she *has* said that "this case commenced, timely, on September 1, 2022 [before Judge Bloom] and was dismissed Without Prejudice, the case was timely filed a second time [before Judge Scola], and the second case was dismissed Without Prejudice. Therefore, this Case [pending before Judge Altman] is now timely filed." MTD Response at 2. Considering that Taylor is proceeding *pro se*, we think she's done just enough to invoke Rule 15(c)(1)(B) here. *See Erickson*, 551 U.S. at 94 ("A document filed *pro se* is 'to be liberally construed[.]'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))).

In their summary-judgment motion, the defendants argued that the statute of limitations on the plaintiff's § 1983 claim had expired a few days before the plaintiff filed his lawsuit. *See ibid.* The plaintiff countered that, under Rule 15(c)(1)(B), his complaint "relate[d] back" to an earlier, timely complaint he'd filed in a separate case before us. *Id.* at *6. We had dismissed that earlier, timely complaint without prejudice (and closed the case) because the inmate's sister—not a lawyer—had filed it on his behalf under the mistaken assumption that she could so with a power of attorney. *See ibid.* In our order dismissing that timely complaint without prejudice, we informed the inmate that "he may file a motion to re-open this case (with an accompanying amended complaint) by May 7, 2021"—a date that fell *outside* the statute-of-limitations period. *Ibid.* (quoting Dismissal Order). "For whatever reason, [the inmate] *didn't* file a motion to re-open" the closed case but instead "filed a *new* complaint and initiated a *new* case"—*after* the statute of limitations had expired but (critically) *before* our May 7, 2021 deadline. *Ibid.* The defendants argued that "by filing a *new* complaint—rather than a motion to reopen his original case—[the inmate] waived his right to have this case relate back . . . because when a timely complaint is dismissed without prejudice, a later action that is filed outside the period of limitations is untimely, as it would be if the previous action had never existed." *Id.* at *7 (cleaned up). And the Eleventh Circuit had recently said as much. *See Wright v. Waste Pro USA, Inc.,* 69 F.4th 1332, 1337 (11th Cir. 2023) ("We have recognized on many occasions that when a timely complaint is dismissed without prejudice, a later action that is filed outside the period of limitations is untimely, as it would be if the previous action had never existed.").

We disagreed with the *Deffendall* defendants, though, and found that the inmate's new complaint *did* relate back. In saying so, we distinguished *Wright* on the ground that the plaintiff there had failed to establish the court's personal jurisdiction, whereas the inmate in *Deffendall* had committed only a very minor technical (almost administrative) error—filing a new case rather than re-opening the original. As we explained:

Of course, Deffendall *didn't* file his complaint in [the original action]. He, instead, opened a new case by filing a new complaint that didn't list his previous case number. That was undoubtedly a mistake—one we mainly attribute to his lack of expertise in the nuances of the case-filing system. So, the question really is: How much should this relatively innocuous (and frankly understandable) technical error cost Deffendall? If we adopt the Defendants' position, we'd be stripping him of the right to bring one of his two claims. That, to our mind, would be an overly harsh and disproportionate punishment for a *pro se* inmate's harmless procedural mistake. *Cf. Justice v. United States*, 6 F.3d 1474, 1482 n.15 (11th Cir. 1993) ("[B]ecause such an order has the effect of precluding plaintiff from refiling his claim due to the running of the statute of limitations[,] the dismissal is tantamount to a dismissal with prejudice. Dismissal with prejudice is a drastic remedy to be used only in those situations where a lesser sanction would not better serve the interests of justice. It is a sanction of last resort, proper only where there is a clear record of delay or willful contempt."); *Shuler v. Garrison*, 718 F. App'x 825, 827–28 (11th Cir. 2017) ("We may thus show some leniency when an appellant's exhibited intent is contrary to a technical mistake that would otherwise impede his appeal. This is especially so for *pro se* litigants." (citing *Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365, 1374–75 (11th Cir. 1983))). *Pro se* litigants are, of course, expected to obey "the relevant law and rules of court," *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989), but we shouldn't use those rules "to set traps and pitfalls by way of technicalities for unwary litigants" when it's clear that a *pro se* party was *trying* to comply, *Finch v. City of Vernon*, 845 F.2d 256, 259 (11th Cir. 1988) (quoting *Des Isles v. Evans*, 225 F.2d 235, 236 (5th Cir. 1955)).

Because (since April 6, 2021) Deffendall has continuously asserted the same failure-to-protect claim in federal court against Defendants Stinson, Brown, Hamilton, and Bryant, we find that the Complaint and Amended Complaint in our case relate back to his April 6, 2021, Complaint—which means that his failure-to-protect claim was filed within the applicable four-year statute of limitations.

*Deffendall*, 2023 WL 8170937, at *7–8.

That's nothing like what happened here. The plaintiff in *Deffendall* was *trying* to comply with our order. It was only because of his unfamiliarity with our docketing system that he inadvertently filed a new case (instead of moving to reopen the old one). Here, by contrast, the Plaintiff all but abandoned her claims in two separate cases—ignoring the unambiguous instructions of two federal judges along the way. In the case before Judge Bloom, the Clerk of Court issued a summons, but the Plaintiff failed to serve the Defendant within the 90 days set out in Rule 4(m)—despite having been warned by Judge Bloom that her failure to do so would result in dismissal. And, in the case before Judge Scola, the Plaintiff neither paid the filing fee nor submitted an application for leave to proceed

*in forma pauperis* within the time limits Judge Scola had set. What we're dealing with here, then, is not a *pro se* plaintiff who's *trying* to prosecute her case while making minor (if not wholly unexpected) technical errors. We're dealing, instead, with a plaintiff who appears to prosecute her case only when it's convenient for her.

Our case is more like the Eleventh Circuit's decision in *Foudy v. Indian River County Sheriff's Office*, 845 F.3d 1117 (11th Cir. 2017). The plaintiffs there sued several entities and agencies under 42 U.S.C. § 1983, alleging violations of Florida's Driver's Privacy Protection Act. *Id.* at 1120. Judge Martinez (of our Court), "concerned the complaint constituted a mere 'shotgun pleading,' entered an order severing the [plaintiffs'] claims against the separate defendants." *Ibid.* "The order dismissed all defendants except the first named defendant and granted the [plaintiffs] two weeks to refile separate actions against the dismissed parties." *Ibid.* Judge Martinez's order also "specifically provided [that] the newly-severed actions, when refiled, would be considered continuations of the prior action for statute of limitations purposes. The [plaintiffs] refiled thirteen separate actions within the allotted time." *Ibid.* So far, so good.

But Judge Rosenberg, "presiding over the refiled cases, entered three identical paperless orders dismissing the [plaintiffs'] complaints in each case" because the plaintiffs "did not clearly demonstrate [that] their claims against the various defendants arose out [of] the same transaction[.]" *Id.* at 1121. Judge Rosenberg "dismissed each case without prejudice, but did not provide for the tolling of the statute of limitations as Judge Martinez's order had done. [The plaintiffs] were given fifteen days to re-file separate actions against appropriate defendants and expressly state in any complaint naming multiple defendants how such parties' conduct constituted the same transaction for the purposes of joinder." *Ibid.* When the plaintiffs failed to comply with this directive, Judge Rosenberg "clos[ed] each case, stating [that] the [plaintiffs] could reopen the cases only by filing a motion explaining their failure to comply with court orders and an amended complaint meeting the requirements of the [prior] order

[on the issue of joinder]." *Ibid.* "Later that same day, [the plaintiffs] filed motions to reopen in each case[.]" *Ibid.* But the plaintiffs "provided no explanation as to how the claims against the defendants arose out of the same transaction." *Ibid.* Judge Rosenberg thus "denied each of the motions [to reopen]" and gave the plaintiffs the "opportunity to refile," which the plaintiffs finally did in a way that satisfied Judge Rosenberg. *Ibid.*

Sometime later, though, the defendants "moved to dismiss, asserting [that the plaintiffs'] claims were barred by the statute of limitations." *Ibid.* After concluding that the "occurrence rule applied," Judge Rosenberg "entered judgment in favor of the defendants and closed the cases." *Ibid.* In their appeal to the Eleventh Circuit, the plaintiffs argued—among other things—that Judge Rosenberg "erred when [she] dismissed their actions for misjoinder" by "misread[ing] Judge Martinez's severance order as requiring an explanation of any joinder of multiple defendants[.]" *Id.* at 1125. In the plaintiffs' view, therefore, "their complaints should relate back to [the] date of their first complaint" under Rule 15(c). *Ibid.* The Eleventh Circuit disagreed, reasoning that "whether or not the district court's dismissals were appropriate in the first instance, the [plaintiffs'] *subsequent failure to obey court orders warranted closure of each case.*" *Ibid.* (emphasis added). Judge Rosenberg's "January 16 paperless order," the court noted, "clearly instructed the [plaintiffs] to explain their grounds for joinder in any complaint naming multiple defendants. The [plaintiffs] failed to abide by this requirement when they refiled substantially similar complaints on February 2, 2015, unaccompanied by any such explanation." *Id.* at 1126. As a result, the court said, "both the district court's February 3 refusal to accept the [plaintiff's] amended complaints and its decision to deny their motions to reopen the cases were entirely appropriate and operated as a second dismissal without prejudice." *Ibid.* As the Eleventh Circuit explained, "[d]ismissal of a complaint, without prejudice, does not allow a later complaint to be filed outside the statute of limitations," *ibid.* (quoting *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1242 (11th Cir. 2004)), because the "statute of limitations is not automatically tolled in such a situation,

absent some additional reason," *ibid.* (citing *Justice v. United States*, 6 F.3d 1474, 1479–80 (11th Cir. 1993)). Since the plaintiffs had not provided any such reason, the Eleventh Circuit held that their "complaints cannot relate back" to the initial complaint. *Ibid.*

Like the plaintiffs in *Foudy*, our Plaintiff's earlier complaints were dismissed by Judges Bloom and Scola for failure to follow court orders.[9] And our Plaintiff's lack of compliance was far more egregious than the conduct at issue in *Foudy*. In that case, after all, the plaintiffs *at least* tried to comply with court orders by filing documents the court ultimately found unsatisfactory, whereas our Plaintiff did *nothing*, ignored the unambiguous instructions of *two* federal judges, and then and just *walked away* from two federal cases *she* had initiated. We therefore see little reason to stray from *Foudy*'s default rule that the "[d]ismissal of a complaint, without prejudice, does not allow a later complaint to be filed outside the statute of limitations." *Id.* at 1126 (quoting *Bost*, 372 F.3d at 1242).

Having determined that Counts I–III of the Amended Complaint are untimely, we can only adjudicate those claims on the merits if we apply the doctrine of equitable tolling. Like the *Foudy* plaintiffs, however, our Plaintiff hasn't invoked the doctrine of equitable tolling at all—though she could have. *See Gant v. Jefferson Energy Co-op*, 348 F. App'x 433, 434 (11th Cir. 2009) ("Because it is non-jurisdictional, the time limit [to file a Title VII suit] is subject to equitable tolling, permitting a court to disregard the late filing under certain circumstances."); *Campbell v. Air Jamaica, Ltd.*, 760 F.3d 1165, 1175 (11th Cir. 2014) ("Equitable tolling is the doctrine under which plaintiffs may sue after the statutory period has expired *if they have been prevented from doing so* due to inequitable circumstances." (cleaned up & emphasis added)). In any event, equitable tolling *probably* wouldn't have saved her claims

---

[9] Specifically, as we've highlighted, the Plaintiff failed to serve the Defendant in compliance with Judge Bloom's order and failed *either* to pay the filing fee *or* to apply to proceed *in forma pauperis* in Judge Scola's case.

because she hasn't identified any circumstances, let alone any "*extraordinary* circumstances," that might "justify her untimely filing." *Jackson v. Astrue*, 506 F.3d 1349, 1353 (11th Cir. 2007) (emphasis added).

Our Plaintiff, in sum, has failed to meet her burden of showing that our case relates back to the lawsuits she filed before Judges Bloom and Scola. *Cf. Bray v. Bank of Am., N.A.*, 763 F. App'x 808, 811 (11th Cir. 2019) (finding that a *pro se* plaintiff's complaint didn't "relate back" to a prior complaint that had been dismissed without prejudice, even though "both civil actions ar[o]se from the same set of operative facts"); *Morency v. Barnes*, 2017 WL 3268890, at *2 (M.D. Fla. Aug. 1, 2017) (Corrigan, J.) (dismissing 42 U.S.C. § 1983 claims as untimely, even though the *pro se* plaintiff had timely filed a prior complaint—based on the same operative facts and against the same defendant—which had been dismissed without prejudice); *Mathis v. Inch*, 2021 WL 648163, at *2 (S.D. Fla. Jan. 8, 2021) (Cooke, J.) (noting that, because "dismissal of a complaint, without prejudice, usually does not allow a later complaint to be filed outside the statute of limitations," a court "may equitably toll a limitations period" *only if* "the plaintiff [has] established that equitable tolling is warranted" (cleaned up)). Because Counts I–III are untimely, we **DISMISS** them **without prejudice**.

### b. Count I (Discrimination) fails on the merits because the Plaintiff hasn't alleged discriminatory intent

The Defendant argues that, "[i]f it were not also time-barred (which it is), Plaintiff's Title VII discrimination claim would still need to be dismissed for failure to state a claim because it lacks sufficient (or any) allegations of the required elements to state that claim." MTD at 10. According to the Defendant, "to state a claim of discrimination" under Title VII, a plaintiff "must" establish a *prima facie* case under the burden-shifting framework the Supreme Court laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and "allege that such action was based on the employer's

discriminatory animus." MTD at 8–10.[10] As we've explained in other (similar) contexts, though, the

Defendant is just wrong to rely on *McDonnell Douglas* at the pleading phase of this case.

In *McDonnell Douglas*, the Supreme Court "established a three-step process for analyzing [Title

VII] discrimination claims[.]" *Ehrhardt v. Haddad Rest. Grp., Inc.*, 443 F. App'x 452, 455 (11th Cir.

2011).

> Step one is for the plaintiff, who establishes what *McDonnell Douglas* calls a '*prima facie*'
> case of discrimination' when she shows that (1) 'she belongs to a protected class,' (2)
> 'she was subjected to an adverse employment action,' (3) 'she was qualified to perform
> the job in question,' and (4) 'her employer treated similarly situated employees outside
> her classification more favorably.' . . . The *prima facie* showing entitles the Plaintiff to a
> rebuttable presumption of intentional discrimination. The defendant then rebuts that
> presumption (if it can) by offering evidence of a valid, non-discriminatory justification
> for the adverse employment action. Once that justification is offered, the presumption
> of discrimination falls away and the plaintiff tries to show not only that the employer's
> justification was pretextual, but that the real reason for the employment action was
> discrimination. This final question merges with the plaintiff's ultimate burden of
> persuading the factfinder that she has been the victim of intentional discrimination.

*Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 944 (11th Cir. 2023) (quoting *McDonnell Douglas*, 411 U.S.

at 802 (cleaned up)).

But *McDonnell Douglas*'s burden-shifting framework doesn't apply at the pleading phase of a

case. After all, "[t]he prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a

pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). In other words:

> This Court has never indicated that the requirements for establishing a *prima facie* case
> under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy
> in order to survive a motion to dismiss. For instance, we have rejected the argument
> that a Title VII complaint requires greater "particularity," because this would "too
> narrowly construct[t] the role of the pleadings." *McDonald v. Santa Fe Trail Transp. Co.*,
> [427 U.S. 273, 283 n.11 (1976)] . . . .
>
> In addition, under a notice pleading system, it is not appropriate to require a plaintiff
> to plead facts establishing a *prima facie* case because the *McDonnell Douglas* framework
> does not apply in every employment discrimination case. For instance, if a plaintiff is

---

[10] While the Defendant doesn't cite directly to *McDonnell Douglas*, the case he relies on, *Steinberg v. Donahoe*, 2014 WL 1356711, at *10 (S.D. Fla. Apr. 7, 2014) (Rosenbaum, J.), employs the same four-part test the Supreme Court first outlined in *McDonnell Douglas*.

able to produce direct evidence of discrimination, he may prevail without proving all the elements of a *prima facie* case . . . . It thus seems incongruous to require a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered.

*Id.* at 511–12.[11] Contra the Defendant's position, then, we do not ask, at this stage of the case, whether our Plaintiff has established a *prima facie* claim of discrimination under *McDonnell Douglas*.

All that said, the Plaintiff's claim *still* fails because she never alleges that the Defendant acted with discriminatory intent or animus. *See Faulk v. City of Orlando*, 731 F.2d 787, 790 (11th Cir. 1984) ("Nowhere in his pleadings did appellant allege any action by the individual defendants based on appellant's race which could be characterized as *purposeful discrimination* violative of Title VII . . . Indeed, the factual allegations against the individual defendants . . . merely recount ill treatment at their hands without reference to *discriminatory intent*." (emphases added)); *see also McCray v. Potter*, 263 F. App'x 771, 773 (11th Cir. 2008) ("The Plaintiff in an employment discrimination lawsuit must show that an adverse employment action was related to an employer's *discriminatory animus* towards the employee based on a protected characteristic." (emphasis added)).

While the Plaintiff *does* say that her DHS supervisors treated her worse than one or more Hispanic white males, *see, e.g.*, Amended Complaint ¶ 9 ("Plaintiff claims that management . . . afforded privileges to the less qualified, white, Hispanic, male candidate that was hired for [the job] that [were] not afforded to the Plaintiff."), she hasn't alleged that they did this *because of* her race or sex. Indeed,

---

[11] The Supreme Court confirmed the continued viability of *Swierkiewicz* in *Twombly*, where it held that "*Swierkiewicz* did not change the law of pleading, but simply re-emphasized that the Second Circuit's use of a heightened pleading standard for Title VII cases was contrary to the Federal Rules' structure of liberal pleading requirements." *Twombly*, 550 U.S. at 570 (cleaned up); *see also Brown v. Daikin Am. Inc.*, 756 F.3d 219, 229 (2d Cir. 2014) ("[T]he Supreme Court held in *Swierkiewicz* . . . that a plaintiff need not plead facts establishing a prima facie case under *McDonnell Douglas* to survive a motion to dismiss . . . and went out of its way in *Twombly* to reaffirm that holding[.]"); *McCone v. Pitney Bowes, Inc.*, 582 F. App'x 798, 801 n.4 (11th Cir. 2014) (noting that *Twombly* "had no impact on *Swierkiewicz*'s statement that a plaintiff is not required to plead a prima facie case of discrimination in order to survive dismissal").

the only detail the Plaintiff *does* provide on the issue of intent has to do with her academic credentials—not her race or sex. *See id.* ¶ 5 ("Plaintiff claims that DHS management at the Miami District Field Office, replied to Plaintiff via e-mail in response to her Direct Hire application and stated, 'You cannot apply for this job . . . you have a PhD, good luck.'"). As the Eleventh Circuit has explained, "employers are free to not promote an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all as long as the promotion is not based on discriminatory reasoning." *Moss v. St. Vincent Health Sys.*, 2024 WL 729953, at *4 (11th Cir. Feb. 2, 2024) (per curiam). Since the Plaintiff hasn't alleged that the Defendant failed to promote her *because of* any such "discriminatory reasoning," Count I *also* fails on the merits.

> ### c. Count II (Retaliation) fails on the merits because the Plaintiff hasn't alleged that she was engaged in a statutorily protected activity

"Title VII's anti-retaliation provision makes it 'an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1344 (11th Cir. 2022) (quoting 42 U.S.C. § 2000e-3(a)). "To state a claim for retaliation under Title VII, the 'plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression.'" *Cotton v. Cracker Barrell Old Country Store, Inc.*, 434 F.3d 1227, 1233 (11th Cir. 2006) (quoting *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998)).

Statutorily protected activity "includes opposition to 'any practice made an unlawful employment practice' under Title VII." *Edwards v. Ambient Healthcare of Ga., Inc.*, 674 F. App'x 926, 930 (11th Cir. 2017) (quoting 42 U.S.C. § 2000e-3(a)); *Adams v. City of Montgomery*, 569 F. App'x 769, 772 (11th Cir. 2014) ("Protected activity under Title VII includes making a charge under [42 U.S.C. §

2000e–3(a)].”). “A plaintiff engages in statutorily protected activity when he or she protests an employer's conduct which is actually lawful, so long as he or she demonstrates a good faith, reasonable belief that the employer was engaged in unlawful employment practices.” *Williams v. Crown Liquors of Broward, Inc.*, 878 F. Supp. 2d 1307, 1311–12 (S.D. Fla. July 19, 2012) (Altonaga J.) (quoting *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998)); *Rollins v. State of Fla. Dept. of Law Enf't*, 868 F.2d 397, 400 (11th Cir. 1989) (“[T]he protection afforded by the statute is not limited to individuals who have filed formal complaints, but extends as well to those, like [plaintiff], who informally voice complaints to their superiors or who use their employers' internal grievance procedures.”).

The Plaintiff has failed to plead a viable retaliation claim because she hasn't alleged that she participated in any statutorily protected activity. Instead, the Plaintiff says only that she performed her work admirably, sought a promotion, resigned, and then applied for a new position. *See generally* Amended Complaint. None of that is protected conduct because none of it involves the filing of *complaints*—by the plaintiff to her employer—about possible Title VII violations. *See Benavides v. Ga. Pub. Def. Council*, 2021 WL 2448360, at *8 (N.D. Ga. Jan. 14, 2021) (‘Statutorily protected activity' for purposes of Title VII includes making internal complaints to superiors about discrimination or retaliation made unlawful by Title VII.”); *Kessler v. Zimmerman Advert., LLC*, 2017 WL 5178351, at *2 (S.D. Fla. Nov. 8, 2017) (Gayles, J.) (“To establish that she engaged in a statutorily protected activity, Plaintiff must allege that she voiced opposition to an unlawful employment practice or participated in any manner in an investigation, proceeding, or hearing concerning an unlawful employment practice.”). The only actions the Plaintiff undertook that *might* have qualified for Title VII protection were the Plaintiff's submission of various complaints to the DHS Office for Civil Rights (assuming the Plaintiff's superiors were even aware of these filings), but *she* doesn't mention *any* of these documents or proceedings in her Amended Complaint. *See generally* Amended Complaint. Without

alleging that she engaged in any statutorily protected activity, the Plaintiff's retaliation claim (assuming it had been timely filed) fails on the merits. *See, e.g.*, *Arafat v. Sch. Bd. of Broward Cnty.*, 549 F. App'x 872, 875 (11th Cir. 2013) (affirming the district court's decision to grant a motion to dismiss when the plaintiff had not "alleged facts to suggest that she engaged in a protected activity—the first element to a Title VII retaliation claim"); *Jones v. Unity Behavioral Health, LLC*, 2021 WL 5495578, at *2 (11th Cir. Nov. 23, 2021) (affirming the district court's finding that Title VII plaintiffs failed to state a retaliation claim because they hadn't alleged that they participated in any "protected activity under Title VII").

> **d. If it had been timely, Count III (Constructive Termination) would have survived**

"The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his 'working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Green v. Brennan*, 578 U.S. 547, 555 (2016) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004)); *see also Doe v. Dekalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1450 (11th Cir. 1998) ("[T]he general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer . . . is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee." (quoting *Young v. Sw. Sav. and Loan Assoc.*, 509 F.2d 140, 144 (5th Cir. 1975)));[12] *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001) (noting that this reasonable-person standard "for proving constructive discharge is higher than the standard for proving a hostile work environment"). "When the employee resigns in the face

---

[12] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

of such circumstances, Title VII treats that resignation as tantamount to an actual discharge." *Green*, 578 U.S. at 555.

To assert a constructive-discharge (or constructive-termination) claim under Title VII, the Plaintiff must do two things: *One*, she must plausibly assert that "[she] was discriminated against by [her] employer to the point where a reasonable person in [her] position would have felt compelled to resign." *Ibid. Two*, she must show that she "actually resigned." *Ibid.* The Plaintiff has plainly met that second element. *See* Amended Complaint ¶ 16 ("Plaintiff submitted a letter of resignation to management at the Miami District Field Office, stating that she was forced to resign from her job because of intentional harassment and retaliation from DHS management at the Miami Field Office."). Whether she's met the first prong is a bit less clear. Still, recognizing that "an artificially high threshold for what constitutes an adverse employment action would undermine the purposes of the statute by permitting discriminatory actions to escape scrutiny," *Dekalb Cnty. School Dist.*, 145 F.3d at 1453 n.21, we think the Plaintiff has done *just* enough to state a claim for constructive discharge. Had the Amended Complaint been timely, in short, we would have allowed the Plaintiff to proceed with her claim that being "blocked . . . from applying" for a better position, having to "continue completing GS-12/13/14 work tasks" despite her status as a GS-9 employee, having to "train management," and having to "train the entire Miami District Field Office," Amended Complaint ¶ 14, would have made a "reasonable person [feel] compelled to resign,'" *Green*, 578 U.S. at 555 (quoting *Pa. State Police*, 542 U.S. at 141); *see also Dekalb Cnty. School Dist.*, 145 F.3d at 1453 n.21 ("We believe that the purposes of the statute are appropriately served by requiring the fact finder to determine whether a reasonable person would consider the action adverse under all the facts and circumstances.").

## II.   Count IV: False Claims Act

In Count IV, the Plaintiff alleges that the Defendant violated the False Claims Act (the "FCA"), 31 U.S.C. § 3729, *et seq.*, by falsely accusing her of "theft of cash money via ATM withdrawals"

and "writing a bad check that bounced to the Federal Government." Amended Complaint at 9–10. But there's one big problem with this claim: The FCA imposes civil liability on people who commit specific fraudulent acts *against* the government; it *doesn't* impose civil liability on *the government* for having made false claims to individuals. *See* 31 U.S.C. § 3729 ("Any person who [commits conduct prohibited by the statute] is liable *to* the United States Government." (emphasis added)); *see also Hickman v. Spirit of Athens, Ala., Inc.*, 985 F.3d 1284, 1286 (11th Cir. 2021) (noting that "the False Claims Act . . . 'prohibits any person from making false or fraudulent claims for payment *to* the United States" (quoting *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 411 (2005) (emphasis added)). And Count IV never alleges—or even suggests—that the Defendant in any way perpetrated a fraudulent act *against the government*. Since Count IV is therefore not a "plausible" claim to relief, *Iqbal*, 556 U.S. at 678—and because any "amendment would be futile," *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001)—we **DISMISS** it **with prejudice**.

### III.        Count V: Nepotism

Finally, in Count V, the Plaintiff alleges that the Defendant violated the provisions of 5 U.S.C. § 3110 when her DHS supervisors hired someone "related to one or more members at the DHS Miami District Field Office" for the position she didn't get back in 2019.[13] Amended Complaint ¶¶ 22–25. That statute provides that "[a] public official may not appoint, employ, promote, advance, or advocate for appointment, employment, promotion, or advancement, in or to a civilian position in the agency in which he is serving or over which he exercises jurisdiction or control any individual who is a relative of the public official." 5 U.S.C. § 3110(b). But § 3110 **doesn't** create a private cause of action. *See Limongelli v. Postmaster Gen. of U.S.*, 707 F.2d 368, 372 (9th Cir. 1983) ("We hold there is no private

---

[13] As a refresher, the Plaintiff applied for a promotion in 2018, but her application was "stopped" by DHS higher-ups. Amended Compliant ¶¶ 2–4. Fed up with the "intentional harassment and retaliation," the Plaintiff resigned from DHS later that year. *See id.* at 9. But then, in 2019, the Plaintiff applied for this *other* DHS position, which is now the subject of her nepotism claim. *Id.* ¶¶ 22, 25.

cause of action under [5 U.S.C. §] 3110."); *see also Nguyen v. McHugh*, 65 F. Supp. 3d 873, 906 (N.D. Cal. 2014) (same). We therefore **DISMISS** Count V **with prejudice**. *See Carran v. Morgan*, 2007 WL 3520480, at *5 (S.D. Fla. Nov. 14, 2007) (Marra, J.) ("Of course, there is no private right action . . . . Accordingly, since Plaintiff's amendment would be futile, Plaintiff's request to amend the complaint to add a claim for negligence is denied.").

* * *

We dismiss the first three counts of the Amended Complaint *without prejudice* because, though these claims appear to be time-barred, we think it prudent to give the Plaintiff one *final* chance to show that the doctrine of equitable tolling might save her here. *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1132 (11th Cir. 2019) ("Our cases make clear that a *pro se* plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice—at least, that is, where a more carefully drafted complaint might state a claim." (cleaned up)); *Jemison v. Mitchell*, 380 F. App'x 904, 907 (11th Cir. 2010) ("When it appears that a *pro se* plaintiff's complaint, if more carefully drafted, might state a claim, the district court should give the *pro se* plaintiff an opportunity to amend his complaint instead of dismissing it with prejudice. Dismissal with prejudice is proper, however, . . . if a more carefully drafted complaint could not state a valid claim." (cleaned up)). But we dismiss the Plaintiff's fourth and fifth counts *with prejudice* because the former arises under a statute that doesn't apply and the latter purports to advance a claim under a law that doesn't create a private cause of action. Any amendment of those two counts would thus be futile. *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant."). And "[a] district court need not allow even a *pro se* plaintiff leave to amend where amendment would be futile." *Ibid.*

After careful review, therefore, we hereby **ORDER and ADJUDGE** as follows:

1.   The Motion to Dismiss [ECF No. 22] is **GRANTED**.

2.   Counts I–III of the Amended Complaint [ECF No. 9] are **DISMISSED without prejudice**. The Plaintiff may file a second amended complaint by **May 16, 2024**. In that second amended complaint, the Plaintiff must (1) cure the pleading deficiencies we've identified in this Order and (2) show that *either* Rule 15 *or* the doctrine of equitable tolling saves her claims.

3.   Counts IV–V are **DISMISSED with prejudice**.

**DONE AND ORDERED** in the Southern District of Florida on May 2, 2024.

_____

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record